IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| DONALD LAMB, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 05-1696-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Rory Linerud
P. O. Box 1105
Salem, Oregon

      Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon  97204

Page 1 - OPINION AND ORDER

David R. Johnson
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Donald Lamb brings this action pursuant to section 205(g) of the Social Security

Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB"). I affirm

the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months. 42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and
1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for
determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the
burden of proof on the first four steps.  Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir.
2001); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the
claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity,
disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines
whether the claimant has a medically severe impairment or combination of impairments.  A
severe impairment is one "which significantly limits [the claimant's] physical or mental ability to
do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not
have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine
whether the impairment is equivalent to one of a number of listed impairments that the
Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R.
§§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments,
the claimant is conclusively presumed to be disabled.  If the impairment is not one that is
presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the
impairment prevents the claimant from performing work which the claimant performed in the
past.  If the claimant is able to perform work which he or she performed in the past, a finding of
"not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and
416.920(e).

Page 3 - OPINION AND ORDER

If the claimant is unable to perform work performed in the past, the Commissioner

proceeds to the fifth and final step to determine if the claimant can perform other work in the

national economy in light of his or her age, education, and work experience. The burden shifts to

the Commissioner to show what gainful work activities are within the claimant's capabilities.

Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able

to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial

evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1

(9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than

a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences

reasonably drawn from the record, and if evidence exists to support more than one rational

interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d

1190, 1193 (9th Cir. 2003) (internal citations omitted).

## PROCEDURAL HISTORY

Lamb's application for DIB was denied on October 3, 2002 by ALJ Schloss after a

hearing. Lamb appealed the decision to this court and, under a stipulation of the parties, the

matter was remanded to the Commissioner for further proceedings. On remand, ALJ Schloss

held another hearing on July 15, 2004, but decided that the hearing would have to be reconvened

after additional medical records were obtained for the medical expert, Dr. DeBolt. The hearing

was continued on November 16, 2004, by ALJ Terrill rather than ALJ Schloss. No testimony

was taken because there was only a single page of additional medical evidence. ALJ Terrill

expected the case to be returned to ALJ Schloss for decision. It was not and ALJ Terrill held a

full hearing on May 12, 2005, but Dr. DeBolt did not attend. On July 6, 2005, ALJ Terrill issued

a decision finding that Lamb was not disabled under the Act. That decision is the one before me

on appeal.

## THE ALJ'S DECISION

ALJ Terrill adopted the medical summary from ALJ Schloss's opinion. ALJ Terrill

found that Lamb had a severe impairment of degenerative disc disease. However, the ALJ did

not find that this impairment met or medically equaled the requirements of any of the

impairments listed in Appendix 1, Subpart P of the Social Security Regulations. The ALJ found

that Lamb's allegations about the intensity, persistence, and limiting effects of his symptoms

were disproportionate and not supported by the objective medical findings nor any other

corroborating evidence. The ALJ did not give the testimony of Lamb's spouse significant

weight. Based on these decisions and his review of the record, the ALJ concluded that Lamb

retained the residual functional capacity to lift and carry a maximum of ten pounds, to sit for one

hour at a time for up to eight hours, to stand or walk for up to 30 minutes at a time for a

maximum of two hours, to be limited to occasional stooping, that he must avoid concentrated

exposure to hazardous conditions, that he is restricted to simple, routine, repetitive work, and that

he must avoid constant use of his right upper extremity. Based on testimony from the vocational

expert, the ALJ found that Lamb could not perform his past relevant work but could work as a

food service cashier, a small products assembler, or an optical equipment cleaner/polisher and

was thus not disabled under the Act.

Page 5 - OPINION AND ORDER

**FACTS**

Lamb, who was 43 years old on the date of the decision, alleges he has been disabled since November 1, 2000 due to degenerative disc disease.  Lamb has a high school education and primarily worked as a welder/fabricator of stainless steel brewing tanks.  Lamb also alleges impairments of leg pain, give-way weakness of the legs, right arm and hand limitations involving numbness and pain, neck pain, the inability to sit or stand for extended periods, the need to frequently lie down, difficulty understanding, and memory deficiencies.  He states that he can stand for 30 minutes at a time for 2 out of 8 hours in a work day, and can sit for 1 hour at a time for 3 out of 8 hours, but after each period of standing or sitting he must lie down for 1 to 1 ½ hours before resuming sitting or standing.

Lamb complains of constant lower back pain which, if he moves wrong, becomes sharp pains accompanied with numb legs.  His legs become weak if he walks too far.  The constant pain is at a level of seven to eight without pain medication.  At the time of the September 2002 hearing, Lamb had not taken any pain medication in about a year.  At other times, Lamb has been prescribed narcotic pain medications.  Lamb also complains of numbness and cramping in his right hand.

In September 2001, Lamb took a five-day tent camping trip to hike and hunt.  His wife reported that he was hunting and camping for two weeks out of the year.  In the summer of 2002, he went fishing once or twice a month and had to walk a mile into the fishing spot.  During the walk, Lamb would stop to rest for ten minutes.  By the time of the hearing in July 2004, Lamb had stopped hunting and fishing.

## DISCUSSION

I.    <u>Lamb's Credibility</u>

Lamb contends that the ALJ improperly rejected his testimony.  Lamb notes that Dr. Duff and Dr. Keenen both noted objective findings to support his disability.  Lamb argues that he did not seek further treatment because his treating physicians advised Lamb that there was nothing they could medically provide to him other than pain medication.  Because of the unavailability of treatments that could aid him, Lamb contends that the fact that he has medical insurance is not relevant.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom.  The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom.  <u>Id.</u> at 1282.  In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms.  If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion.  <u>Id.</u> at 1284.

Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ stated that although it is clear that Lamb has an underlying medical condition which could reasonably result in the symptoms he alleges if he were to attempt to exceed his residual functional capacity, his "allegations as to the intensity, persistence, and limiting effects of his symptoms are disproportionate and not supported by the objective medical findings nor any other corroborating evidence." Tr. 230.  The ALJ also noted significant gaps in Lamb's treatment history, relatively infrequent trips to the doctor for allegedly disabling symptoms even though Lamb has medical insurance, the routine and conservative nature of the treatment, and evidence of exaggerated symptoms and limitations.  The ALJ also noted that Lamb's daily activities are not as limited as would be expected from his allegations and that Lamb has not made any attempt to get retraining or to find a job doing lighter work.

As stated above, medical evidence is a relevant factor in determining the severity of pain. The ALJ did not dispute the objective medical findings put forth by Dr. Duff.  Instead, the ALJ noted that the symptoms were more severe than typically seen with those findings.  This is not error.  The ALJ's concern about exaggeration of symptoms is supported by the medical report from Dr. Carvalho.

Lamb argues that he had little treatment because the doctors told him there was nothing they could do.  The record indicates that the doctors did not believe that surgery would alleviate

Page 8 - OPINION AND ORDER

Lamb's symptoms.  There was other treatment advised, such as an evaluation in the addiction medicine and chronic pain clinic, which Lamb refused to follow.  Tr. 197.

Finally, the ALJ relied on the reports of Lamb's daily activities.  Although Lamb had stopped hunting and fishing by the time of the last hearing, he was engaging in both activities regularly and for extended periods of time during the first several years he claims to have been disabled.  This level of activity is inconsistent with Lamb's subjective symptom testimony.

I conclude that the ALJ gave appropriate clear and convincing reasons for rejecting Lamb's subjective symptom testimony.

II.    Lay Testimony

Lamb contends that the ALJ improperly rejected the lay testimony of his wife.  He contends that the fact that she is not a medical expert is not relevant to her ability to observe him.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness.  A medical diagnosis, however, is beyond the competence of lay witnesses.  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).  A legitimate reason to discount lay testimony is that it conflicts with medical evidence.  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ found that Lamb's spouse was generally credible to the extent she reports observations of his behavior.  He did not give her testimony significant weight, however, because it was inconsistent with other substantial evidence and, without medical expertise, her opinions had limited value in determining how Lamb's impairments affect his ability to perform basic work activities.

Page 9 - OPINION AND ORDER

Lamb's wife testified that the doctors told Lamb that they could not do anything for him. As discussed above, alternatives to surgery were offered and refused. Her testimony about Lamb's grip problems conflicts with Lamb's report that he did not drop things. The ALJ gave reasons for rejecting her testimony that are germane to Lamb's spouse and consequently, the ALJ did not err in the rejection.

III.     Development of the Record

Lamb contends that the ALJ failed to develop the record concerning his alleged cervical and upper extremity impairments. Lamb notes that no consulting or examining physician ever assessed his neck, arm, or hand complaints to determine their effect on his residual functional capacity. In particular, Lamb notes that the July 15, 2004 hearing was continued to allow Dr. DeBolt to review updated medical information on the treatment for these problems. Dr. DeBolt was present but did not testify at the next brief hearing when only the issue of the appropriate ALJ was discussed. The doctor was not present at the final full hearing held by the ALJ.

A Social Security ALJ has an "independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation omitted). The duty is heightened if a claimant is unrepresented or is mentally ill and cannot protect his own interests.

The ALJ must supplement the record if: (1) there is ambiguous evidence; (2) the ALJ finds that the record is inadequate; or (3) the ALJ relies on an expert's conclusion that the evidence is ambiguous. Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005). The supplementation can include subpoenaing the claimant's physicians, submitting questions to the

claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow the record to be supplemented.  Tonapetyan, 242 F.3d at 1150.

The hearing was continued once to allow Lamb's attorney to obtain additional medical records from Kaiser.  Only a single additional page was produced.  Treatment records for Lamb's cervical and right arm and hand problems had already been obtained.  Tr. 201-04, 292-306.  The treating physician obtained an MRI and ordered a nerve conduction study.  The records are not ambiguous and do not require further inquiry.  Based on the evidence, the ALJ limited Lamb to being unable to engage in any constant use of the right upper extremity, in addition to the ten pound lifting limitation.  The ALJ did not fail his duty to fully and fairly develop the record.

IV.    Vocational Testimony

The vocational expert testified based on the following hypothetical:  lift or carry up to 10 pounds; stand or walk for 30 minutes at any one time not to exceed 2 hours in a work day; sit for 1 hour at a time, no overall limit; should only occasionally engage in any stooping; should not be exposed to any concentrated hazards such as moving equipment, machinery or unprotected heights; limited to simple routine repetitive work; and cannot engage in any constant use of the right upper extremity.

Based on my conclusions above, the ALJ committed no error in his statement of the hypothetical.  The issue is whether the vocational expert testified consistently with the hypothetical.

I do note that in his opinion, the ALJ concluded that Lamb could work as an optical equipment cleaner/polisher.  The vocational expert did not limit her testimony to this subcategory but discussed generally cleaning and polishing jobs with the ability to change position.  The ALJ

made a similar error with food service cashier as opposed to the expert's testimony on the more

general unskilled booth cashier.  The ALJ's errors were harmless because even if he had used the

correct job title, the analysis and result would have been the same.

Lamb contends that some of the vocational testimony is erroneous because it contradicts

information contained in the Dictionary of Occupational Titles ("DOT") and does not conform to

the hypothetical.

      A.    <u>Hand Usage and Fingering</u>

Lamb contends that the vocational expert first testified that the assembler and

cleaner/polisher jobs did not involve constant use of the upper extremity and later inconsistently

stated that the jobs did require constant hand usage and fingering.  Lamb argues that based on the

DOT, both jobs require the constant use of the hands and arms and thus cannot be performed.

Similarly, Lamb argues that the job of ticket seller/booth cashier requires constant or repetitive

hand and arm use.

The Commissioner contends that the vocational expert's testimony was not inconsistent

and is sufficient to overcome the presumptions stated in the DOT.  Further, she argues that the

hypothetical did not prohibit repetitive hand and arm use and that the record does not support the

additional limitation.

The Dictionary of Occupational Titles ("DOT") raises a presumption about the job

classification but the presumption is rebuttable.  The ALJ may rely on expert testimony which

contradicts the DOT if the record contains persuasive evidence to support the differences.

<u>Johnson v. Shalala</u>, 60 F.3d 1428, 1435 (9th Cir. 1995).  In particular, the ALJ may rely on the

testimony of the vocational expert, when the expert gives an opinion on the size of the remaining

occupational base within the individual's residual functional capacity.  Wright v. Massanari, 321

F.3d 611, 616 (9th Cir. 2003).

      The ALJ did not require the vocational expert to state the DOT-assigned number for each

job referenced.  Thus, Lamb and the Commissioner refer to different jobs with similar titles

which could be the job description used by the expert.  For example, Lamb argues based on the

DOT's description of Polisher, Eyeglass Frames (713.684-038), Polisher Clock & Watch

(715.682-018), and Cleaner and Polisher Any Industry (709.687-010), which all have varying job

requirements.  Here, since the vocational expert did not state which particular job title she was

referencing when giving her estimates of the number of available jobs which met the

hypothetical's limitations, Lamb's arguments based on his assumption of which specific job was

referenced are unpersuasive.  The ALJ was entitled to rely on the expert testimony.

      The expert testified that the inability to engage in any constant use of the right upper

extremity would not impact any of the jobs she had already identified.  Under questioning from

Lamb's attorney, the expert explained that even increasing the limitation to only occasional use

of the right upper extremity would not make any of the identified jobs inappropriate.  The expert

discussed the difference between reaching in front of the body, which the jobs required, and

reaching overhead or past the front part of the body.  Because the jobs were all performed at

bench level, she believed they could all still be performed.  There is no inconsistency in her

testimony.

      B.    Hazards

      Lambs contends that the vocational expert incorrectly testified that the assembler and

cleaner/polisher jobs were suitable despite a limitation of concentrated hazards including moving

Page 13 - OPINION AND ORDER

equipment or machinery.  Lamb also notes that the vocational expert testified that both jobs required the use of small machinery and equipment.

The Commissioner disputes Lamb's characterization of the vocational expert's testimony. The Commissioner also notes that the DOT job descriptions selected by Lamb do not require the use of machinery, as stated in the "Environmental Conditions" section of the descriptions.  The Commissioner notes that the DOT contains other jobs which generally fit the explanation given by the vocational expert but which were not chosen by Lamb as examples in his argument.  In summary, the Commissioner contends that Lamb's inference, that mention of machines in part of the job description contravenes the restriction in the hypothetical to no exposure to any concentrated hazards, is unfounded.

Again, there are numerous assembler jobs as well as numerous cleaner/polisher jobs so we cannot refer to a particular job description but must rely on the expert testimony.  The expert testified that the cleaning and polishing jobs involve "such things as cleaning and polishing metal products, watch parts, electrical components, small machinery, small optical equipment . . . ." Tr. 375.  She did not testify that hazardous machinery would be used.  Thus, her testimony fits within the ALJ's hypothetical.

C.    Simple, Routine, Repetitive Work

Lamb argues that the booth cashier job requires an SVP of 4, not 2 for unskilled, the level to which he was limited by the ALJ.  The Commissioner contends that the vocational expert's selection of a particular job with an SVP above unskilled work does not mean that this was the only booth cashier the expert was identifying.  The Commissioner notes that the expert testified

that she limited her identification of jobs to unskilled booth cashiering positions and gave

examples of particular types of positions that were so limited.

The Commissioner is correct that the DOT contains some cashier jobs, such as Ticket

Seller (211.467-030), who sells tickets for travel on buses and for admission to places of

entertainment, that are unskilled.  The expert testified that the unskilled booth cashiering job she

referenced would be like the booth cashiers at the Smart Park garages in downtown Portland.

Her testimony fit within the hypothetical.  Again, the ALJ committed no error by relying on the

vocational expert.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and

the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this ____8th_____ day of November, 2006.


                                    ____/s/ Garr M. King_____
                                    Garr M. King
                                    United States District Judge